UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PHILIP GIBSON, ET AL.                                             CIVIL ACTION

VERSUS                                                            NO. 14-2273

MARLIN GUSMAN, ET AL.                                             SECTION: "B"(3)

**REPORT AND RECOMMENDATION**

Plaintiffs, Philip Gibson, Mark Luzzo, and Benito Castro, state inmates, filed the instant federal civil rights action pursuant to 42 U.S.C. § 1983.[1]  They sued the following defendants: the unidentified "Property Management Director" of the City of New Orleans; Mayor Mitch Landrieu; the unidentified members of the New Orleans City Council; the unidentified state "Fire Marshall [sic]"; the unidentified "New Orleans Fire Inspector"; the unidentified director of the state "Department of Health and Human Services"; the unidentified director of the state "Department of Hospitals"; the unidentified deputy mayors of the City of New Orleans; Sheriff Marlin Gusman; Chief Earl Weaver; Chief Bordelon; Directors Martin and Jenkins; Dr. Gore; Dr. Smith; and Wardens Loque, Winfield, Pittman, and "John Doe."  In this lawsuit, plaintiffs challenge various conditions of their confinement within the Orleans Parish Prison system.

---

[1]   In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[2] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the

---

[2] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Although broadly construing plaintiffs' complaint,[3] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

## II. Improper Defendants

Before turning to the underlying merits of plaintiffs' claims, the Court first notes that many of the defendants are improperly named for the following reasons.

### A.  City Defendants

Included among the numerous defendants are city officials and employees.  The majority of those defendants are not properly identified, including an unidentified "Property Management Director," unidentified members of the New Orleans City Council, an unidentified "New Orleans

---

[3]  The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Fire Inspector," and unidentified deputy mayors. Generally, § 1983 claims must be asserted against identified persons. <u>Francis v. Terrebonne Parish Sheriff's Office</u>, Civ. Action No. 08-4972, 2009 WL 4730707, at *3 (E.D. La. Dec. 9, 2009)  ("[A] § 1983 action must be filed against an actual identified person."); <u>Staritz v. Valdez</u>, No. 3-06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007) ("The federal rules make no provision for joining fictitious or 'John Doe' defendants in an action under a federal statute."); <u>Vollmer v. Bowles</u>, Civ. Action No. 3:96-CV-0081, 1997 WL 102476, at *2 (N.D. Tex. Feb. 28, 1997) ("Neither the Federal Rules of Civil Procedure nor 42 U.S.C. § 1983 provides authority for joining fictitious defendants in this suit.  The rules make no provision for the naming of 'Does' and later substituting a real person's name.").

Second, in any event, plaintiffs' claims in this lawsuit challenge the conditions of their confinement within the Orleans Parish Prison system.  However, the city officials and employees, both Mayor Mitch Landrieu, who is properly identified in the complaint, and those who are not properly identified, play no role in the day-to-day operation of the parish's jails as a result of the statutorily established division of responsibilities between the City of New Orleans and the Orleans Parish Sheriff with respect to operation of the parish prison system.  Put simply, the City, as the local governing authority, is responsible only for financing and maintaining the jails, La. Rev. Stat. Ann. §§ 15:304,[4] 15:702,[5] and 33:4715,[6] while the Sheriff is responsible for the day-to-day operation of

---

[4] La. Rev. Stat. Ann. § 15:304 provides in pertinent part: "All expenses incurred in the different parishes of the state or in the city of New Orleans by ... confinement ... of persons accused or convicted of crimes ... shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."

[5] La. Rev. Stat. Ann § 15:702 provides in pertinent part: "The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."

[6] La. Rev. Stat. Ann. § 33:4715 provides in pertinent part:  "The police jury of each parish shall provide ... a good and sufficient jail ...."

4

the jails, La. Rev. Stat. Ann. §§ 13:5539(C)[7] and 15:704.[8]  See, e.g., Fairley v. Stalder, 294 Fed. App'x 805, 812 (5th Cir. 2008) ("We have examined Louisiana Revised Statutes sections 15:702, 15:704, 33:1435, and 33:4715, and we agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority."). This division of responsibilities was concisely explained in Broussard v. Foti, Civil Action No. 00-2318, 2001 WL 258055 (E.D. La. Mar. 14, 2001):

> In Louisiana, sheriffs are the final policy makers with respect to the management of jails.  See Jones v. St. Tammany Parish Jail, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998).  Under Louisiana law, the authority of the Orleans Parish Criminal Sheriff is derived from the state Constitution, not from the City of New Orleans.  See La. Const. art. 5 § 27.  The sheriff's office, not the City, controls the inmates of the jail, the employees of the jail, and the daily management and operation of the jail.  See La. R.S. § 33:1435; 15:704; O'Quinn v. Manuel, 773 F.2d 605, 609 (quoting Amiss v. Dumas, 411 So.2d 1137, 1141 (La.App. 1st Cir.), writ denied, 415 So.2d 940 (La. 1982)).
>      Under the statutory framework, the responsibility of the City of New Orleans' is to finance and physically maintain the jail. See Griffin v. Foti, 523 So.2d 935, 937 (La.App. 4th Cir. 1988); see also O'Quinn, 773 F.2d at 609.  In Louisiana, the legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility. See Amiss, 411 So.2d at 1141.  The City has no authority over the operations of the jail or the management of the sheriff's employees. See Jones, 4 F. Supp. 2d at 613; O'Quinn, 773 F.2d at 609 (administration of the jail is province of sheriff). In other words, the City's financial obligations do not constitute authority to control how the sheriff fulfills his duties. See O'Quinn, 773 F.2d at 613 (citing Jenkins v. Jefferson Parish Sheriff's Office, 402 So. 2d 669, 670 (La. 1981)).  Thus, the City's responsibilities are limited to funding and maintaining the jail. See La. R.S. § 15:702.

---

[7] La. Rev. Stat. Ann. § 13:5539(C) provides in pertinent part: "Each sheriff shall be keeper of the public jail of his parish ...."  This provision formerly appeared at La. Rev. Stat. Ann. § 33:1435(A).

[8] La. Rev. Stat. Ann. § 15:704 provides in pertinent part: "Each sheriff shall be the keeper of the public jail of his parish ...."

Broussard, 2001 WL 258055, at *2. Moreover, with respect to the City's obligation to "maintain" the jails, that obligation is one merely to fund, not actually provide, any needed maintenance. Actual provision of the maintenance is the Sheriff's responsibility. See Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *4 (E.D. La. May 11, 2010); Griffin v. Foti, 523 So.2d 935, 938-39 (La. App. 4th Cir.), writ denied, 531 So.2d 272 (La. 1988).

Therefore, the city officials and employees named in this lawsuit simply are not proper defendants with respect to plaintiffs' claims. See, e.g., Rue, 2010 WL 1930936, at *3-4 (finding that there was no legal basis for holding the City and its employees liable for the conditions of the plaintiff's confinement within the Orleans Parish Prison system in light of the division of responsibilities between the City and the Sheriff); Wade v. Gusman, Civ. Action No. 06-4541, 2006 WL 4017838, at *3 (E.D. La. Oct. 17, 2013) ("Because ... [Mayor] C. Ray Nagin ... had no authority over the operations or employees of the Orleans Parish Prison system, [he] cannot be held legally responsible for the conditions within the prison system ...."), adopted, 2007 WL 60998 (E.D. La. Jan. 8, 2007); Galo v. Blanco, Civ. Action No. 06-4290, 2006 WL 2860851, at *2 (E.D. La. Oct. 4, 2006) (finding that there was no legal basis for holding the mayor liable for the conditions of the plaintiff's confinement within the Orleans Parish Prison system in light of the division of responsibilities between the City and the Sheriff).

### B. State Defendants

Plaintiffs have also sued the unidentified state "Fire Marshall [sic]", the unidentified director of the state "Department of Health and Human Services," and the unidentified director of the state

"Department of Hospitals."[9] Again, as already noted, naming unidentified persons as defendants is generally improper.

Second, to the extent that plaintiffs are suing these defendants for monetary damages in their official capacities,[10] that is also improper. State officials or employees sued in their official capacities for monetary damages simply are not considered "persons" subject to suit under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F. Supp. 2d 476, 479 (E.D. La. 2007); Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). Additionally, because a claim against a state official or employee in his or her official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment. Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043, at *6; Demouchet, 2008 WL 2018294, at *3.

### C. Warden "John Doe"

Plaintiffs have also sued one of the wardens as a "John Doe." Again, for the reasons already explained, that is generally improper.

---

[9] The Court notes that the State of Louisiana does not have a "Department of Health and Human Services" or a "Department of Hospitals." It does, however, have a "Department of Health and Hospitals." La. Rev. Stat. Ann. § 36:251. The plaintiffs are presumably attempting to sue the head of that department.

[10] In their complaint, plaintiffs state: "All Defendants are hereby sued in their Individual and Official Compacity [sic]." Rec. Doc. 1, p. 29.

Nevertheless, even if the Court were to overlook, or give plaintiffs an opportunity to correct, the noted defects regarding the foregoing defendants, as well as the additional defects which obviously exist with respect to the remaining identified defendants,[11] plaintiffs still would not be entitled to relief because their underlying claims also fail for the following reasons.

### III.  Plaintiffs' Claims

#### A.  Exposure to Hazardous Substances

Plaintiffs' first claim is that they have been exposed to hazardous substances. However, the only hazardous substance they identify with respect to this claim is mold.[12] The jurisprudence has repeatedly held that the mere fact that mold is present does not render an inmate's confinement

---

[11]   Even as to the identified defendants, plaintiffs' allegations are insufficient. For example, plaintiffs indicate that they are suing all of the defendants in their individual capacities. Rec. Doc. 1, p. 29. However, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In this lawsuit, plaintiffs do not make any factual allegations concerning the specific manner in which any of the named defendants were personally involved in the acts or omissions giving rise to the claims asserted.

Plaintiffs also indicate that they are suing all of the defendants in their official capacities. Rec. Doc. 1, p. 29. However, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Therefore, to hold a governmental entity liable based on an official-capacity claim in a § 1983 lawsuit, the federal violation at issue must have resulted from a "policy or custom" of that governmental entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.  Here, plaintiffs do not allege that their rights were violated as a result of a governmental policy or custom, let alone identify such a policy or custom.

[12]   Rec. Doc. 1, p. 37.

unconstitutional. See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). Moreover, it must be noted that while jails should be reasonably clean, the Constitution does not require that they be "completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Accordingly, this claim should be dismissed.

## B.  Inadequate Medical Care

Plaintiffs' second claim is that the jail medical department "fails to respond appropriately to life-threatening issues."[13] Inmates obviously have a right to medical care; however, that right is a

---

[13]  Rec. Doc. 1, pp. 37-38.

limited one. Specifically, regardless of whether an inmate is a pretrial detainee or a convicted prisoner, his constitutional right to medical care is violated *only* if his serious medical needs[14] are met with deliberate indifference[15] on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Here, although plaintiffs are obviously concerned that the medical care provided within the Orleans Parish Prison system is inadequate, they do not allege that *they* have any serious medical needs, much less that any of the named defendants have been deliberately indifferent to those needs. While the Court does not doubt that some inmates at the jail have "life-threatening issues," there is simply no indication whatsoever that the plaintiffs have such issues, and it is clear that they do not have standing to bring claims on behalf of other inmates. See, e.g., Gregory v. McKennon, 430 Fed. App'x 306, 310 (5th Cir. 2011); Reeves v. Collins, No. 94-10182, 1994 WL 559050, at *2 (5th Cir. Sept. 23, 1994); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *4 (E.D. La.

---

[14] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

[15] The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Feb. 22, 2010); Diggs v. Nelson Coleman Corr. Ctr., Civ. Action No. 10-97, 2010 WL 1038229, at *7 (E.D. La. Feb. 17, 2010),  adopted, 2010 WL 1038230 (E.D. La. Mar. 17, 2010); Scheanette v. Riggins, No. Civ. A. 9:05CV34, 2006 WL 722212, at *9 (E.D. Tex. Mar. 15, 2006).[16]  Therefore, this claim should be dismissed.

## C.  Failure to Meet Responsibilities

In its entirety, plaintiff's third claim is stated as follows:  "Plaintiffs Phillip Gibson, Mark Luzzo and Benito Castro continue to sustain injury by La State Departments that fail to respond appropriately to life threatening conditions within their know [sic] duty by law to act with authority in preventing these injuries."[17]

*Even if* the unidentified state laws or regulations on which this claim is presumably based would confer a private right of action, an issue which is by no means clear at this point, it is nevertheless obvious that foregoing statement of plaintiffs' claim fails to comply with the most rudimentary rules of pleading.  Specifically, as the United States Supreme Court has explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   As the Court held in [Bell Atlantic Corporation v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [2007]), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955.  Nor

---

[16]   It must also be noted that although there was a motion to have this matter certified as a class action, that motion was denied.  Rec. Docs. 11 and 21.

[17]   Rec. Doc. 1, p. 38.

11

does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

Further, beyond those basic pleading requirements, even more is necessary for a plaintiff to actually state a claim on which relief may be granted. As already noted earlier in this opinion, a plaintiff fails to state a claim on which relief may be granted unless he pleads "enough facts to state a claim to relief that is *plausible on its face*. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted; emphasis added). With respect to that "facial plausibility" requirement, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 556 U.S. at 678 (citations and quotation marks omitted). Plaintiffs' bare and conclusory statement of this claim obviously "stops short" of that line. Therefore, this claim should be dismissed.

### D. Failure to Protect from Violence

Plaintiffs' fourth and final claim is that they have not been protected from "exposure to violent persons thru lack of appropriate classification."[18] It is clear that "the State owes the same

---

[18] Rec. Doc. 1, p. 39.

duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

In the instant case, plaintiffs do not allege that the purportedly inadequate classification system ever resulted in harm to them, that they personally are particularly susceptible to being attacked in the future due to the classification system, or that prison officials have been made aware of and yet are deliberately indifferent to their need for protection. Rather, they offer only vague and conclusory allegations that the classification system is inadequate and places them in harm's way. That is insufficient to state a federal claim. See, e.g., Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009). Once again, because plaintiffs have not pleaded "enough facts to state a claim to relief that is plausible on its face," their allegations do not rise above a purely "speculative level" so as to state a claim on which relief may be granted. See *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Accordingly, this claim should likewise be dismissed.

IV.  Motion for a Preliminary Injunction

Lastly, the Court notes that plaintiffs have filed a motion for a preliminary injunction in this matter.[19]  However, one of the requirements for a preliminary injunction is that there be a substantial likelihood that the plaintiff will succeed on the merits of his claim.  See, e.g., Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997).  Because all of plaintiffs' claims should be dismissed *sua sponte* for the reasons already explained, they obviously cannot make that required showing in this case.  Accordingly, the motion for a preliminary injunction should be denied.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiffs' motion for a preliminary injunction, Rec. Doc. 22, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiffs' complaint be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[19]    Rec. Doc. 22.

a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this twenty-fourth day of March, 2015.

                                                    **DANIEL E. KNOWLES, III**
                                                    **UNITED STATES MAGISTRATE JUDGE**

---

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.